UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KARI MILLER, et al.,

    Plaintiffs,

v.

PETER THOMAS ROTH, LLC, et al.,

    Defendants.

No. C 19-00698 WHA

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

## INTRODUCTION

In this false advertising class action about cosmetics, defendants move for summary judgment. Triable issues plague both motions, so, with limited exceptions, they are **DENIED**.

## STATEMENT

Defendants Peter Thomas Roth, Designs, Global, and Labs LLC ("PTR Labs") market specialty skincare products. At issue are PTR Labs' Rose Stem Cell and Water Drench product lines. PTR Labs advertised the Rose Stem Cell line with the buzzwords "bio repair," "reparative," "rejuvenates," and "regenerates" (Dkt. No. 81 at 3–5), and the Water Drench Products as containing hyaluronic acid which attracts and retains one thousand times its weight in water from moisture in the atmosphere (Dkt. No. 85 at 3).

Plaintiff Samantha Paulson saw the words "bio repair," "rejuvenates," and "regenerates," concluded the rose stem cells might help the appearance of a facial scar, and bought a Rose Stem Cell Gel Mask (Dkt. No. 81 at 8–9). Plaintiff Kari Miller heard PTR Labs' claims about

hyaluronic acid's exceptional water retention, believed the Water Drench products superior skin hydrators, and purchased one (Dkt. No. 85 at 10–11). Plaintiffs contend both ads were false or misleading and filed suit under, among others, California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* (Dkt. Nos. 68 at 1, 71 at 2–3).

Following plaintiffs' motion (Dkt. No. 65), an order dated January 22 denied class certification (Dkt. No. 103). Defendants moved for summary judgment while the class certification motion was pending (Dkt. Nos. 68, 79). This order follows full briefing and oral argument.

## ANALYSIS

### 1. LEGAL STANDARD.

Summary judgment is appropriate if there is no genuine dispute of material fact. Rule 56(a). Material facts are those "that might affect the outcome of the suit" and "the substantive law's identification of which facts are critical and which facts are irrelevant . . . governs." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A genuine dispute is one where there is "sufficient evidence" such that a "reasonable jury could return a verdict for the nonmoving party." *Id.* at 248–49. "In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). "Rather, it draws all inferences in the light most favorable to the nonmoving party." *Ibid.*

### 2. THE SUBSTANTIVE LAW.

Section 17200 prohibits "any unlawful, unfair or fraudulent business act or practice." *Kwikset Corp. v. Sup. Ct.*, 246 P.3d 877, 883 (Cal. 2011). Here, § 17200 prohibits "not only advertising which is false, but also advertising which, although true, is either misleading or which has the capacity, likelihood or tendency to deceive or confuse the public." *Williams v. Gerber Prods.*, 552 F.3d 934, 938 (9th Cir. 2008). Not anyone can sue though. Private citizens must prove they "ha[ve] suffered injury in fact and [have] lost money or property as a result of the unfair competition." § 17204; *Kwikset*, 246 P.3d at 884. But the thrust of a § 17200 claim

remains whether an ad will likely deceive the public. This analysis is "governed by the reasonable consumer test." *Gerber*, 552 F.3d at 938 (quotation marks omitted).

### 3. DECEPTIVENESS.

Our court of appeals demonstrated the appropriate analysis of a § 17200 deceptiveness claim in *Gerber*. There, the plaintiffs alleged the defendant's "Fruit Juice Snacks" packaging was deceptive. Our court of appeals' analysis proceeded between two guideposts. One was the reasonable California consumer's interpretation of the challenged ad — the "Fruit Juice Snacks" packaging depicted various fruits, so the reasonable consumer could have concluded the snacks contained some juice from those fruits. The other was reality — in fact, the "Fruit Juice Snacks" contained mostly corn syrup and sugar, and just a little bit of white grape juice. The difference between the two, in the eyes of the reasonable consumer, became the key. Our court of appeals explained that the final question of "whether a business practice [was] deceptive [would] usually be a question of fact" for the jury. *See id.* at 936–39.

Here, plaintiffs establish the first guidepost. For the Rose Stem Cell Products, plaintiffs argue the labels "rose stem cells," "cutting edge bio-technology," "bio-repair," and at times "regenerates" and "rejuvenates" would cause the reasonable consumer to "believe that the Rose Stem Cell Mask is capable of repairing skin" (Dkt. No. 81 at 16–17). Some reasonable consumers might interpret this as mere puffery, but others could sensibly conclude that rose stem cells actually repair human skin.

For the Water Drench ad, plaintiffs contend the reasonable consumer would believe that hyaluronic acid *actually can* attract and retain one thousand times its weight in water (Dkt. No. 85 at 1, 3, 15). True, PTR Labs softened the claim with the words "*up to*" (Dkt. 65 at 4). But the plain focus of the ad was *one thousand* times its weight in water. As our court of appeals explained in *Gerber*, reasonable consumers are not "expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." *See id.* at 939. So too here. Subtle qualifications do not overcome the thrust of the ad. A jury could find that, based on the ad, reasonable consumers would expect that hyaluronic acid absorbs and retains about one thousand times its weight in water.

3

Our court of appeals' recent decision in *Becerra v. Dr Pepper/Seven Up Inc.* illustrates the counter example. In *Becerra*, the plaintiff claimed the use of the term "diet" in soft drinks deceptively conveyed the drinks would aid in weight loss when, in fact, they did the opposite. Our court of appeals disagreed because the term "diet" has long been used to denote that the "diet" version of the soft drink contains fewer calories *compared to* the classic version of the soft drink — *not* that the "diet" drink actually provides health benefits. So the plaintiff in *Becerra* failed to establish the first guidepost, a *reasonable* interpretation of the challenged ad. *Becerra v. Dr Pepper/Seven Up, Inc.*, No. 18-16721, 2019 WL 7287554 at *3–5 (9th Cir. 2019). Here, plaintiffs *do* offer reasonable interpretations, rooted in the text of each ad. So this order turns to the next guidepost: what the products actually do.

### A. PLAINTIFF PAULSON'S PROOF OF FALSITY.

Plaintiffs offer the testimony of Dr. Michael Pirrung, an organic chemist with experience in human embryonic stem cell research. Federal Rule of Evidence 702 requires that his testimony "must help the trier of fact to understand the evidence or to determine a fact at issue." Dr. Pirrung's helpful declaration creates a genuine question as to the falsity of the Rose Stem Cell product ads.

Dr. Pirrung, for example, says:

> 12. . . . [Stem cells] can be used to replace cells *of the same type* of cells in the body that have been lost through age or disease. There is no existing human therapy, of any type, that involves stimulating a human stem cell to develop into a specialized cell (like a skin cell). The fact that a plant stem cell is exactly that in the plant from which it comes is meaningless concerning its ability to affect a human stem cell or human skin cell . . . *A plant cell cannot become a human cell*.
>
> 13. Any cell (animal or plant, stem cell or not) in a topically applied cosmetic cannot affect cells in the skin, because the barrier function of the skin prevents those cells from penetrating to the level of living cells . . . If a plant stem cell were to penetrate the stratum corneum, like *any* invading organism . . . it would be recognized by the human immune system as foreign and be destroyed.

(Dkt. No. 81-19, ¶¶ 12–13) (emphasis added in part). Simply put, rose stem cells in a topical cosmetic are ineffective because: (1) *plant* cells don't regenerate *human* skin; and (2) skin barriers and the immune system prevent any penetration of topical stem cells.

4

The declaration helpfully explains basic concepts about the technology at issue, plant stem cells in cosmetics. FED. R. EVID. 702. Dr. Pirrung's explanation provides a sufficient basis to determine what the Rose Stem Cell Products *actually do*: nothing. With both guideposts set — the consumer's reasonable interpretation and the products' actual capability — the jury will have a simple question: is the divergence deceptive? *See Gerber,* 552 F.3d at 939. Dr. Pirrung's declaration provides sufficient evidence for a "proper jury question" which precludes summary judgment. *Anderson*, 242 U.S. at 249.

PTR Labs counters that Dr. Pirrung fails to discuss Paulson and the specific ad language at issue (Dkt. No. 82 a 13). But as above, the standard is whether Dr. Pirrung's declaration is *helpful* to the trier of fact, not whether it covers plaintiffs' entire case. His explanation of stem cell basics goes far enough to aid the jury — the rose stem cells don't regenerate human skin.

### B. PLAINTIFF MILLER'S PROOF OF FALSITY.

Plaintiffs also provide sufficient evidence to create a *genuine* dispute as to the deceptiveness of PTR Labs' claim that hyaluronic acid absorbs up to one thousand times its weight in water. Dr. Pirrung says the claim is "incredible on its face," and explains:

> 15. This outlandish claim is entirely unsupported by science. Published data from actual studies by real chemists establish that hyaluronic acid binds a small amount of water, equivalent to about half the weight of the hyaluronic acid, or between 9 and 19 molecules, with an average value of 14 ($\pm$5) water molecules. These include, in chronological order: [A. Davies et al., *A study of factors influencing hydration of sodium hyaluronate from compressibility & high-precision densimetric measurements*, BIOCHEM. J. (1983) 213, 363–9; N. Jouon et al., *Hydration of hyaluronic acid as a function of the counterion type & relative humidity*, 26 CARBOHYDRATE POLYMERS 69 (1973); K. Haxaire et al., *Hydration of hyaluronan polysaccharide observed by IR spectrometry. II. Definition & quantitative analysis of elementary hydration spectra & water uptake.*, 72 BIOPOLYMERS 149 (2003); T. Mlčoch et al., *Hydration & drying of various polysaccharides studied using DSC*, 113 J. THERM. ANAL. & CALORIMETRY 1177 (2013)]. Each of these publications used a different method to make direct measurements of the amount of water bound to hyaluronic acid. The differences in methods used for these empirical determinations produced somewhat different results, but they are all similar, in the range of 0.36–0.86 g $H_2O$ / g hyaluronic acid.

(Dkt. No. 65-26 at ¶ 15) (citations converted to Bluebook). Even more helpful than his earlier declaration, this one cuts through scientific argument and simply reports the *peer-reviewed and published findings* of four other sets of researchers (Dkt. No. 85 at 16). PTR Labs disputes the

5

declaration but cites no peer-reviewed literature casting doubt upon his cited publications (Dkt. Nos. 79 at 12–14, 92 at 8–10).

Again, plaintiffs present the jury question described in *Gerber* — a reasonable consumer, based on the ad, could expect that hyaluronic acid can attract and retain one thousand times its weight in water, but, in truth, hyaluronic acid retains only about half its weight in water, a divergence off by a factor of up to two thousand. *See Anderson*, 477 U.S. at 249; *Gerber*, 552 F.3d at 939. And where fairly presented, the issue of an ad's deceptiveness "will usually be a question of fact" for the jury. *Gerber*, 552 F.3d at 938. Summary judgment here is inappropriate.

Our jury will look forward to an in-court demonstration in which a certain amount of hyaluronic acid is placed in a beaker, one thousand times that weight in water is placed in another beaker, and the contents are combined, all watching to see if all the water will be absorbed. Both parties' experts would be well advised to prepare for such a demonstration.

On the other hand, plaintiffs fail to present evidence to create a genuine dispute as to the falsity of the other two challenged ads: that hyaluronic acid draws in atmospheric vapor and provides long lasting moisturizing benefits. Plaintiffs' opposition only addresses the first claim, whether hyaluronic acid holds one thousand times its weight in water (Dkt. No. 85 at 3–10, 15–17). They do not address *where* the water is absorbed from or the claimed long lasting benefits (*id.* at 3–10, 15–17). Thus, while plaintiffs' challenge to the advertised water retention may proceed, plaintiffs fail to establish a genuine dispute as to the second and third challenged ads. Summary judgment is granted as to these claims.

**4. STANDING.**

The next question is whether plaintiffs have standing to challenge PTR Labs' ads. As above, private citizens must "ha[ve] suffered injury in fact and [have] lost money or property as a result of the unfair competition." § 17204; *Kwikset*, 246 P.3d at 884. "[A]s a result" requires "actual reliance" on the ad. *Id.*, 246 P.3d at 887–88. And "injury in fact" and "lost money or property" require an individual, nontrivial loss. *Id.* at 887. So the whole inquiry condenses into a single question: "[a] consumer who relies on a product label and challenges a

misrepresentation contained therein can satisfy the standing requirement of section 17204 by alleging . . . that he or she would not have bought the product *but for* the misrepresentation." *Id.* at 890 (emphasis added). And *Kwikset* emphasizes the low bar for injury: the "increment, the extra money paid [for the product,] is the economic injury and affords the consumer standing to sue." *Id.* at 890–91.

### A. PLAINTIFF PAULSON'S STANDING.

A reasonable jury could find that Plaintiff Samantha Paulson has standing under § 17204. To start, Paulson testified in her deposition that she purchased a Rose Stem Cell Gel Mask:

> Q When did you purchase the Peter Thomas Roth gel mask product from Ulta?
> . . .
> **A 2018.**

(Paulson Tr. at 110–11). PTR Labs argues that Paulson's memory is not enough proof (Dkt. Nos. 68 at 9–11, 82 at 5), and point to everything Paulson has forgotten about her purchase (Dkt. Nos. 68 at 9–11, 1–3, 5–6). Paulson, however, is competent to testify to her own prior actions. See FED R. EVID. 602. Her forgetfulness goes to the weight of her testimony, not its admissibility. At summary judgment "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Anderson*, 242 U.S. at 255. So Paulson's testimony of purchase is sufficient.

Paulson also presents sufficient evidence for a jury to reasonably find the challenged ad motivated her purchase. At her deposition, Paulson testified:

> Q [W]hat representations indicated to you that the product would help improve the appearance of your scar, if any?
>
> **A The product advertised rejuvenating, regenerative, and like bio repair.**
>
>     \*      \*      \*
>
> Q Okay. Prior to buying it in 2018, you said you looked at some ads?
>
> **A Yes.**

7

> Q All right. Do you remember how much time between the time you first looked at the ads and the time you made the buying decision.
>
> **A No. I do not. I know that I used the packaging in the store. So for using that as advertisement, it was seconds. But I'm sure that I had seen it previously, which helped spur my memory of when I had purchased it after the first time and wanted to try it again and give it another go, since that time had been so brief.**

(Paulson Tr. at 99, 138). But because Paulson cannot recall *when* she saw the entire ad, PTR Labs argues she never saw the entire challenged ad (Dkt. 68 at 12–16). The terms "rejuvenating" and "regenerating" were supposedly removed from the Rose Stem Cell Mask in April 2015 and the products sold out by 2018, so Paulson could never have seen the entire ad (*id*. at 15), or so PTR Labs contends.

None of this, however, forecloses Paulson's theory. Believing her testimony and drawing the inferences in her favor, *see Anderson*, 477 U.S. at 255, Paulson has forgotten when she saw the prior ad, but she did rely on it when making her 2018 purchase (*see* Paulson Tr. at 99, 110). When a manufacturer promotes a lie about its products, those who were misled by the lie may well continue to rely on the lie even after the manufacturer has withdrawn the lie from circulation. Admittedly, Paulson will have to explain away a lot of memory snafus at trial. Our jury may possibly think she is the liar. But all of that goes to the weight, not admissibility, of her evidence.

Paulson also provides sufficient basis to find she suffered the requisite harm. As above, Paulson testified at her deposition that she purchased a Rose Stem Cell Gel Mask (Paulson Tr. at 110–11). She paid an undue price premium. *See Kwikset*, 246 P.3d at 890.

PTR Labs protests that Paulson cannot have standing because her interpretation of the Rose Stem Cell ads was unreasonable (Dkt. Nos. 68 at 16–18, 82 at 9–11). A reasonable jury could, however, find that her interpretation fell close enough to what a reasonable consumer would have understood to satisfy the reliance element. A manufacturer who lies about its products and thus misleads the public cannot escape liability merely because the particular plaintiff got misled in additional, far-fetched ways by the ad.

Last, PTR Labs argues Paulson lacks standing because her deposition testimony contradicts the complaint. Specifically, Paulson's complaint alleges she purchased a Rose Stem Cell Precious Cream, but she testified at deposition to purchasing a Gel Mask (*id.* at 9). As Paulson admitted at deposition and notes in her brief, the mix-up was a clerical error — "[T]hat must be a typo. I never bought the cream. I bought the mask" (*ibid.*, Dkt. No. 81 at 10). The Court is disappointed in plaintiffs' counsel for injecting this error into the pleadings (if it was truly an error). Counsel must promptly move to correct it and must live with Ms. Paulson being impeached by the "error" at trial. But the snafu is insufficient to toss out her case on summary judgment.[1]

### B. PLAINTIFF MILLER'S STANDING.

A jury could also reasonably find Plaintiff Kari Miller has standing. Miller testified she saw the television ad for the Water Drench Products, was impressed by the claim that hyaluronic acid attracts and retains up to one thousand times its weight in water, believed it, and thus purchased a Water Drench Luxe kit (Dkt. No. 85 at 10–11). Under *Kwikset*, this is "sufficient evidence" of standing. *See* 246 P.3d at 890; *Anderson*, 477 U.S. at 249. The ad prompted Miller's purchase, and she paid an allegedly undue premium. *See Kwikset*, 246 P.3d at 890. No more is required.

PTR Labs mounts two challenges. To start, PTR Labs argues Miller's interpretation of the ad was unreasonable and undermines her standing (Dkt. No. 79 at 16–19). As explained

---

[1] The parties raise several uncompelling evidentiary quibbles. PTR Labs' Reply raises three challenges to Paulson's evidence (Dkt. No. 82 at 1–4). It contends Paulson's declaration in opposition to the motion (Dkt. No. 81-18) improperly recalls dates Paulson could not remember at her deposition, specifically "that she bought the Gel Mask at least three to four months before December 2018 and perhaps even earlier that year" (Dkt. No. 82 at 2). Defendants point to no reason why the date in 2018 when Paulson purchased the mask matters. Paulson testified at deposition that she purchased the challenged product in 2018, that is sufficient to preclude summary judgment on this point. The request to strike is denied as moot. PTR Labs then requests to strike Paulson's apparently new statements about her 2016 purchase of Rose Stem Cell Products. Because Ms. Paulson appears to withdraw her claim regarding a 2016 Rose Stem Cell mask purchase (Dkt. No. 81-18 at ¶ 4), PTR Labs' request is denied as moot. PTR Labs' third request, to strike Paulson's deposition errata sheet, unused above, is denied as moot. Finally, plaintiffs' objection to PTR Labs' allegedly new reply evidence regarding lack of harm is denied as moot.

above, this argument fails. To show causation for standing, moreover, Miller need only show *actual* reliance on the ad. *See* § 17204; *Kwikset*, 246 P.3d at 888.

Then, PTR Labs contends Miller cannot have standing because she was satisfied with her purchase (Dkt. No. 79 at 6). This argument ignores *Kwikset*:

> For each consumer who relies on the truth and accuracy of a label and is deceived into making a purchase, the economic harm is the same: the consumer has purchased a product that he or she *paid more for* than he or she otherwise might have been willing to pay if the product had been labeled accurately.

246 P.3d at 890. PTR Labs' products need not be ineffective, and Miller may be generally satisfied with her purchase. Nevertheless, she paid an undue price premium. *See id.* at 890–91. Thus, plaintiff Miller presents sufficient evidence to support her standing to sue.[2]

**5. PLAINTIFFS' REMAINING CLAIMS.**

Plaintiffs assert standalone claims of unjust enrichment. PTR Labs contends California does not recognize a standalone unjust enrichment claim. "To allege unjust enrichment as an independent cause of action, a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense." *ESG Capital Partners v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016). Plaintiffs contend consumers' purchase money is the benefit unjustly gained from false advertising (Dkt. Nos. 81 at 22, 85 at 17–18). It is premature to dismiss unjust enrichment as a possible remedy.

**6. PLAINTIFFS' REQUEST TO DEFER RULING AND TO CONTINUE DISCOVERY.**

Plaintiffs' requests to defer ruling on the motions for summary judgment and continue discovery are denied as moot.

**7. PLAINTIFFS' "ERRATA" OPPOSITION TO SUMMARY JUDGMENT OF MILLER'S CLAIM.**

PTR Labs objects to plaintiffs' attempt to file a corrected opposition (Dkt. No. 87-1) to the opposition to summary judgment of Miller's claims. "Once a reply is filed, no additional

---

[2] Last, PTR Labs raises several evidentiary disputes regarding Miller's standing to challenge ads beside the primary claim regarding hyaluronic acid's exceptional water retention. Because plaintiffs fail to provide sufficient evidence of the falsity of these other ads, these disputes are also denied as moot.

10

memoranda, papers, or letters may be filed without prior Court approval." Civ. L.R. 7-3(d). Plaintiffs did not request leave to file a corrected opposition. When an attorney signs a filing, the attorney certifies the accuracy of the filing. And the attorney is presumed to have *reviewed* the filing. Plaintiffs did not submit a declaration of inadvertent filing mistake, such as a junior attorney or paralegal accidentally filing the wrong document. Plaintiffs' corrected opposition is improper and is **STRICKEN**.

## CONCLUSION

Plaintiffs offer sufficient evidence to create triable issues about whether Paulson has standing and whether PTR Labs' Rose Stem Cell ads were false or misleading. As to Paulson, PTR Labs' motion for summary judgment is **DENIED**. Plaintiffs also offer sufficient evidence to create triable issues about whether Miller has standing and whether the Water Drench ad claiming hyaluronic acid can attract and retain up to one thousand times its weight in water is false or misleading. As to this challenge, PTR Labs' motion for summary judgment is also **DENIED**. But because plaintiffs do not present evidence challenging the claims that hyaluronic acid absorbs water from the atmosphere or provides long lasting benefits, summary judgment against those claims is **GRANTED**.

**IT IS SO ORDERED.**

Dated: January 22, 2020.

                WILLIAM ALSUP
                UNITED STATES DISTRICT JUDGE

11